SCHULTEIS, Appellant, vs. MILWAUKEE CONCRETE MIXER
COMPANY, Respondent.

*May 3—May 31, 1921.*

*Damages: Loss of services of minor: Excessive damages: Appeal:
Setting aside verdict: Error of civil court of Milwaukee
county: Reversal by circuit court.*

1. The verdict of a jury cannot be set aside if supported by any
   credible evidence; and a judgment of the civil court of Mil-
   waukee county should not be reversed by the circuit court
   in the absence of error such as would justify a reversal of
   the circuit court by the supreme court.
2. In a father's action for the loss of the services of his nineteen-
   year-old son as a result of personal injuries sustained in an
   automobile collision, where the boy had no permanent or
   fixed vocation and no particular trade or occupation, and
   where the testimony showed that at the time of the trial he
   could do any work that did not require the use of the right
   shoulder for extreme lifting or quick motions backward of
   the shoulder, and the only damages proved at the trial being
   $18 paid for the hospital bill and the loss of one month's
   services, which did not exceed $96, a verdict for $1,000 was
   excessive.

APPEAL from an order of the circuit court for Milwaukee
county: LAWRENCE W. HALSEY, Circuit Judge. *Affirmed.*

Plaintiff brought this action in the civil court of Milwau-
kee county to recover damages for the loss of the services
of his son, who was about nineteen years of age, as the result
of personal injuries sustained in an automobile collision.
The case was tried before a jury. A verdict was returned
upon which plaintiff was entitled to judgment, and the
damages were assessed at $1,000. Upon appeal to the
circuit court the judgment was reversed and a new trial in
that court was ordered. From such order plaintiff brings
this appeal.

*Ray J. Cannon* of Milwaukee, for the appellant.

*Henry J. Bendinger* of Milwaukee, for the respondent.

OWEN, J.   It does not appear upon what ground the circuit court reversed the judgment of the civil court, but it was assumed in the argument here that it was on the ground that the damages assessed by the jury were excessive. It is conceded by both parties that the facts upon which liability is predicated were properly jury questions and that the verdict of the jury as to such facts is supported by the evidence.   We therefore confine our investigation to the question as to whether the damages assessed by the jury find support in the evidence.

It is well settled in this court that the verdict of a jury cannot be set aside if supported by any credible evidence. A judgment of the civil court of Milwaukee county should not be reversed by the circuit court in the absence of error such as would justify a reversal of the circuit court by the supreme court.   *Yahnke v. Lange,* 168 Wis. 512, 170 N. W. 722.   The jury assessed plaintiff's damages in the sum of $1,000.   The trial court declined to set them aside. Upon appeal the circuit court reversed the judgment and ordered a new trial, as provided by the act establishing the civil court of Milwaukee county (ch. 549, Laws 1909). Appellant alleges such reversal is error.   The question, therefore, is whether the amount of damages fixed by the jury is sustained by any credible evidence.

The injury occurred on the 23d day of April, 1920. The trial was had on May 25, 1920.   The boy was in the hospital six days.   He was first examined by Dr. Muckerheide, who turned him over to Dr. Lilly for treatment in the hospital.   Neither of these physicians was called as a witness at the trial.   Dr. E. H. Fowle supplied the only medical testimony in the case.   He made an examination of the boy just before, and evidently for the purpose of, testifying as to his physical condition.   He testified that the collar bone or clavicle had been torn from its attachment to the scapula or the shoulder blade.   The ligaments were

re-attached, but the elevation was about one-half inch above the normal point; that there was no way to cure this defect except to cut the ligaments as they have grown together in this malposition and hold them until they have joined in the proper place. When he has the left arm in certain positions, extreme motions of the shoulder and arm, in which he has a break in the uniformity, he will experience some pressure and some pain, and this condition is permanent as far as he could see. It also appeared that the boy was subject to dizzy spells, after the accident and up to the time of the trial. Dr. Fowle further testified that "as soon as the boy gets over the dizzy spells it would be safe for him to drive a car, and in my opinion I should think he could do light work now, such as taking a job as a clerk; in fact I believe he could do any job that didn't require the use of the right shoulder for extreme lifting or quick motions backwards of the shoulder."

At the time of the accident the boy was working for an electrical concern, earning forty-five cents an hour, and his earnings averaged from $20 to $24 per week, which he turned over to his father. It does not appear how long he had occupied this position with the electric company. Prior to working for the electrical concern he worked for the Atlas bakery in the automobile garage repairing automobiles and driving, too, sometimes. How long he held this position and what his earnings were while so engaged does not appear.

It thus appears that the boy had no permanent or fixed vocation. Like many other boys of his age he was working here and there at whatever he could get to do. This action is brought by the father for the loss of the services of the son, which in this instance means earning capacity. Although Dr. Fowle testified that in his judgment there was a loss of shoulder motion, he also testified that the boy could do any kind of work that did not require the use of the right

shoulder for extreme lifting or quick motions backward of the shoulder. There was no evidence that this would interfere in any way with the work he was doing for the electrical company, or that it would interfere with the performance of any work which he was likely to undertake. He had no particular trade or occupation and, like many other boys of his age, was no doubt open for any and all kinds of employment. There is no doubt that he could enter many lines of employment to which the maladjustment testified to by Dr. Fowle would interpose no interference.

The only damages proved at the trial were $18 paid by the father for the hospital bill and the loss of one month's services, which did not exceed $96. The only loss proved, therefore, was $116. The verdict rendered for damages in excess of that amount was based on pure speculation and conjecture and finds no support in the testimony. Conceding that the testimony of Dr. Fowle concerning the permanency of the maladjustment and the resulting loss of shoulder motion was sufficient to form a basis for damages in an action brought in behalf of the boy, there is a total lack of testimony showing that his earning power for and during the remaining years of his minority was in any respect impaired, and affords no ground for the assessment of $1,000 damages found to have been sustained by the father as a result of impaired earning power. The circuit court properly reversed the judgment and ordered a new trial, and the order appealed from should be affirmed.

*By the Court.*—Order affirmed.